W. T. RAWLEIGH COMPANY *v.* DISHEROON.

4-5694

134 S. W. 2d 4

Opinion delivered December 11, 1939.

*C. Floyd Huff, Jr.,* for appellant.

*Witt & Witt* and *H. A. Tucker,* for appellee.

GRIFFIN SMITH, C. J. The trial court, serving as judge and jury, held that the promissory note of Joseph A. Glasgow, E. F. Disheroon, Hugh McCollum, and J. A. Curtis, was not intended to become effective until signed by Glasgow's son and wife, and that as to the appellee Disheroon there was no binding obligation.

In January, 1934, Glasgow contracted with W. T. Rawleigh Company to handle certain products. Disheroon, McCollum, and Curtis became Glasgow's sureties. In April, 1935, the indebtedness was $495.87. A Rawleigh representative agreed with Glasgow and his sureties that a note for the amount in question might be executed, payable $25 a month. There was an acceleration clause, optional to the payee in the event of default. After one installment had been paid the obligation was disregarded. After a reasonable period of waiting the company declared the entire amount due.

Judgment by default went against Curtis and McCollum. Glasgow moved to California and no personal service was had upon him.

Disheroon's defense rests upon his assertion that he "suggested to Mr. Glasgow about security." Glasgow is quoted as having said he had insurance [presumptively] payable to his wife. Appellee testified that Glasgow said: "I will have my wife and boy sign the note with me." The Rawleigh representative was present when this conversation is claimed to have occurred, according to appellee's contention. Appellee's attorney asked: "When you signed that note were they to secure those other signatures?" There was an affirmative answer. It should be noted that appellee had not used the word "they." On the contrary, he had testified to having "suggested to Mr. Glasgow about security." Appellee later testified it was his "understanding" when the note was signed that the additional signatures would be procured, and but for these representations he would have refused to execute the note.

January 31, 1936—more than a year after issuance of the note—appellee wrote appellant: "I tried my best to get [Glasgow] to take care of the payments on his note. . . . If I can get in touch with him and he will make a part payment each month, then all four of us could . . . dispose of it. . . . But owing to the nature of the debt concerning Mr. Curtis, Mr. McCollum, and myself, I think it would be a foolish move on your part to enter suit until we have had ample opportunity to make some arrangements to settle".

McCollum testified he did not hear any conversations regarding procurement of the signatures of Glasgow's son and wife.

While it is true appellee says he would have refused to sign the note if he had not thought the additional signatures would be provided, this testimony was given several years after the transaction occurred. At most it is a present declaration of what at the time of the trial he conceived his attitude to have been when the meeting was held in April, 1935.

The law is well settled that a note or contract signed by a person who stipulates as a condition to completion of the agreement that another signature is to be procured is not binding between the parties or as to those with notice if the condition is not fulfilled.

In the instant case appellee does not testify that he told appellant's agent what he now insists he had in mind. The nearest approach to such a statement was appellee's affirmative response to his attorney's question in which the word "they" was substituted for appellee's explanation that Glasgow was to have been the moving party. In his letter appellee spoke of what "all four of us could do". The four were named, and they do not include Glasgow's son or wife. Appellee undertakes to explain this by saying he did not see the note subject to its conditional execution until after suit was filed, and therefore had no opportunity to ascertain the true status. It is significant that suit was filed May 27, 1936, and that appellee was summoned the following day. A copy of the note was attached to the complaint. Trial was May 16, 1939—yet appellee does not contend that during the interim between the service of summons and trial he informed appellant of the omission of signatures he set up as a defense.

The plea is a technical one. Appellee is entitled to the point only if he has met the burden of proof. No claim is made that Glasgow did not owe the debt. It is admitted appellee was surety to the contract. There is the explanation by appellee that in signing the contract he thought it was a bond for $50. In the absence of fraud upon the part of Glasgow of which appellant was informed, this is no defense. Appellant credited Glasgow in reliance upon appellee's signature to the contract.

Appellee testified more than three years after the letter of January, 1936, was written. At the time of trial his memory in respect of details could not have been as fresh as it was when mention was made of the four who had signed the note. The letter was a voluntary communication in which the obligors were identified. Being in conflict with his recollection of what his purpose

was in 1935, it must be held that the writing was more reliable than appellee's recollection of his intent as expressed by the answer "yes" to his attorney's leading question: "You state to the court that these representations were made to you to get you to sign the note"?

Another conclusion testified to by appellee is that following the April (1935) meeting, Glasgow and the Rawleigh representative drove away together to get the other signatures.

We reverse the judgment and remand with directions that judgment be rendered in favor of appellant because appellee's testimony given in 1939 is not a substantial denial of facts admitted in the letter of 1936. In commenting on the letter and the references to indorsements, appellee said: "That is right—we were the main indorsers".

We think that when appellee's testimony is read as a whole, and that when proper allowances are made for the suggestive nature of leading questions and the acquiescing responses thereto, its effect is to express what appellee's intentions were at the time in the light of how he remembered them four years later. But for the letter we would say the evidence was ample to sustain the trial court's finding of fact.

Glasgow was summoned constructively and an attorney *ad litem* was appointed. Since personal judgment could not have been rendered, there was no occasion for the warning order, or for appointment of the attorney. Appellant should be charged with costs incident to that proceeding. It is not shown that the costs were paid.

The cause, having been remanded, must be referred to the trial court for ascertainment of the amount judgment should be rendered for in conformity with this opinion. Appellee is entitled to credit for payment of $25 as of August 6, 1935. Interest, when allowance is made for the partial payment, would be $114.97 to May 16, 1939.

The only question to be determined by the trial court on remand is the cost of publication, attorney *ad litem*,

and the clerk's cost incidental to that phase of the proceedings.